IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SAMUEL MOORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.     ) | CIVIL ACTION NO. 02-PWG-2692-S |
| ) | |
| ITT TECHNICAL INSTITUTE, ) | |
| ) | |
| Defendant. ) | |
| | |
| STEPHEN HOBBS, BARRY JEFFERSON, ) | |
| WEENA JONES, KIMBERLY McTYER, ) | |
| CARRIE MOORE AND CHELAVONNE ) | |
| SINGLETON, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v.     ) | CIVIL ACTION NO. 03-PWG-0708-S |
| ) | |
| ITT TECHNICAL INSTITUTE, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OF OPINION

Plaintiff Samuel Moore, an African American male, filed this action against defendant ITT Technical Institute, alleging race discrimination in employment in violation of 42 U.S.C. § 1981. Specifically, he alleges that he was denied a promotion to the position of Director of Recruitment and that the promotion was given to a less qualified white employee. He further alleges that he was subjected to harassment and that he was constructively discharged. Moore seeks injunctive relief, back pay, punitive and compensatory damages, and nominal damages.

The parties have consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C. § 636(c) and LR 73.2.

This case is before the court on ITT's Motion for Summary Judgment. (Doc. # 23).

Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 56, *Federal Rules of Civil Procedure*. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be `no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule

>   facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

The following pertinent facts are undisputed or, if disputed, viewed in the light most favorable to Moore, the nonmoving party.

ITT is a private college system focused on technology-oriented programs of study operating over 70 ITT Technical Institutes in 28 states. Moore was employed with the Birmingham campus of ITT from April 17, 1995 until December 31, 2000. He interviewed for employment with Director of Recruitment (DOR) Darrell Gonzales, an African American, and Director of the Birmingham Campus Allen Rice, a white male. Moore was hired into the marketing department as an outside representative. Outside representatives are responsible for recruiting, interviewing, enrolling and starting high school students as ITT students. As an outside representative, Moore reported to the DOR. The job responsibilities of the DOR are to oversee recruiting and marketing efforts of the marketing department and to hire, train and manage marketing department employees. It is normal procedure at ITT for the DOR to follow outside representatives.

On August 16, 1997, Moore received a fast track promotion when he was promoted from an outside senior representative 1 to a senior 2 position. In order to receive a fast track promotion, Moore had to receive a one on his evaluation. A one denotes very exceptional results. Plaintiff Samuel Moore and Steve Litvine, a white male, are the only Birmingham ITT employees whose production was sufficient to receive a fast track promotion.

Moore's wife was diagnosed with cancer in February 2000 and died in August 2000. In September or October 2000, Gonzales left his employment with ITT. Moore applied for and was

interviewed for the position of DOR in October, 2000. Gonzales and Bob Bixler, DOR for the company, told Moore that he was "doing excellent to move to the next level." Rice does not recall asking for Gonzales's recommendation for a successor. Rice testified that he believed Moore to be qualified to be DOR.

Benny Reeves, white, also applied for the position of DOR but requested that his application be kept in confidence. Rice, with input from Regional Director Ron Hendrickson, selected Reeves for the DOR position based on Reeves's prior military experience which included eight years of experience managing multiple military recruiters and recruiting stations, more than three years experience as a field representative (similar to ITT's outside representative position) at DeVry Institute of Technology, a technical college similar to ITT, prior experience in education related fields, prior teaching experience and better performance reviews. Moore had been employed at the Birmingham ITT campus over five years as an outside representative when he applied for the DOR position. He had one year of management experience at Quincy's and a Bachelor of Arts degree from Alabama State University. Reeves's promotion was effective November 1, 2000; however, Moore was aware of the promotion by October 31, 2000.

In November or December, 2000, after the DOR position had been filled by Reeves, Rice learned that Moore would not be available to work weekends or evenings. Rice testified that a candidate for the DOR position who was unavailable for evening or weekend work would not be qualified for the DOR position.

In the one month following Reeves's promotion to DOR, Reeves engaged in the following behavior that Moore described as "harassing:" (1) he called people Moore had interviewed to see if he had shown up, (2) he called Tuscaloosa County High School once while Moore was there to see

if he had shown up, (3) on one occasion he showed up at Pinson Valley High School and stayed through Moore's first presentation.

In early December, Moore met with Reeves and Rice to discuss to the fact that he had not enrolled any students since his return following his wife's death and his performance from the prior month. Rice and Reeves attempted to give Moore a Job Performance memo to sign but he refused to sign the letter because he did not agree with it.

After the meeting with Rice and Reeves, Moore decided to resign from his ITT employment. He submitted a letter of resignation dated December 11, 2000 which stated:

> As you know, I have celebrated five and a half years with ITT. In that time I have been challenged and stimulated by my work, supported by my co-workers and encouraged by my previous manager, Darryl Gonzales. I have very much enjoyed being a part of that winning team.
>
> However, the recent death of my wife and reorganization of the Marketing Department have changed things considerably for me, and I question whether the next five years will be as fruitful for me as the last five, or whether I will continue to be as useful to the company as in the past. As a result of these changes, I find it more important to devote my time and energies to my two young children.
>
> Please accept my resignation, effective December 31, 2000.

(Moore depo, exhibit 16).

Moore testified that no one ever told him that he was going to be fired but that he's "not stupid" and "could read between the lines."

Moore testified that he was further harassed based on the conduct of Roberta Moore whose responsibilities included scheduling students for tests. Moore's students "would fall off the list, they wouldn't get tested, and it always reflected back that I wasn't doing my job." Moore was not aware

of this happening to other representatives. Moore also testified that "there was conflict between department heads with Darryl Gonzales being the only black department head." He testified that some students complained that white students got the better jobs. R. Moore told Moore that Rice would never promote an African American. Rice made a comment during a meeting that Moore attended sometime between 1996 and 1999 that African Americans could not pass a certain test. Moore testified that he did not know if it was true that African Americans had a more difficult time passing the test than other races because the representatives were not allowed to discuss test grades.

Each ITT employee is provided with a current version of ITT's Handbook containing ITT's Equal Employment Opportunity policy which provides, in part, "Employment selection and related decisions are made without regard to race, [...] sex [...] or any other reason prohibited by law. ITT also distributes its freestanding Anti-Harassment and Anti-Discrimination Guidelines to all ITT employees. ITT's policy prohibiting harassment and discrimination is also displayed in the employee break room.

Reeves was demoted in August 2001 from DOR to high school coordinator, a lesser position. Jerome Ruffin, an African American, was selected by Rice with input from the Regional Director as the new DOR effective September 1, 2001. Ruffin's employment was terminated in December 2002 for failure to comply with company policy. Jesse Johnson, also African American, was hired by Rice with input from the District Manager effective December 16, 2002.

I.  Failure to Promote Claim

    A.  Whether the promotion claim under § 1981 is barred by the statute of limitations

ITT argues that Moore's promotion claim under § 1981 is barred by the statute of limitations. Subsequent to ITT's motion for summary judgment and plaintiff's response thereto, the Supreme

Court decided *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004). The Court held that certain § 1981 claims would be subject to the four year limitations period in 28 U.S.C. § 1658, the federal "catch-all" limitations period, rather than a two year limitation period under state law. Specifically, any claim made possible by an enactment subsequent to December 1, 1990, the enactment date of § 1658, would be governed by the four year statute of limitation.

In *R.R. Donnelly*, the Court stated:

> We held in *Patterson v. McLean Credit Union*, 491 U.S. 164 ... (1989) that the statutory right "to make and enforce contracts" did not protect against harassing conduct that occurred after the formation of the contract. Under that holding, it is clear that petitioners' hostile work environment, wrongful discharge, and refusal to transfer claims do not state violations of the original version of § 1981. In 1991, however, Congress responded to *Patterson* by adding a new subsection to § 1981 that defines the term "make and enforce contracts" to include the "termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

541 U.S. at 372-73.

In *Patterson*, the court held that where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981." 491 U.S. at 185.

Because the Supreme Court recognized a § 1981 claim for failure to promote prior to December 1, 1990, the appropriate statute of limitations is two years.

ITT argues that under the two year limitation period, the promotion claim is untimely because Moore had notice that Reeves had been promoted instead of him at least the day before November 1, 2000, the effective date of Reeves' promotion, but that Moore did not file this action until November 1, 2002. Under ITT's premise, Moore knew on October 31, 2000, that he had not

7

received the promotion. Rule 6(a), *Federal Rules of Civil Procedure*, provides that the day of the event from which the designated period of time begins to run shall not be included and that the last day of the period shall be included. In *Moore v. Campbell*, 344 F.3d 1313 (11th Cir. 2003), *cert. denied*, 540 U.S. 1180 (2004), the Eleventh Circuit Court of Appeals applied Rule 6(a) to a claim based on the Anti-Terrorism and Effective Death Penalty Act (AEDPA). The AEDPA became effective April 23, 1996 and had a one year period of limitations. The Court concluded that a claim which arose prior to the enactment date of the AEDPA had to be filed on or before April 24, 1997 in keeping with the general rule for computing time limitations in federal courts. The failure to promote claim is timely.

      B. *McDonnell Douglas* framework

Because Moore attempts to prove his case with circumstantial evidence, the burdenshifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) is applicable. Under this framework, Moore has the initial burden of establishing a *prima facie* case of discrimination. *Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *Combs v. Plantation Patterns*, 106 F.3d 1519 (11th Cir. 1997), *cert. denied,* 522 U.S. 1045 (1998). If he proves a *prima facie* case of discrimination, the burden shifts to ITT to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its action; however, "the defendant need not persuade the court that it was actually motivated by the proffered reasons." *Burdine*, 450 U.S. at 254. Defendant's burden is "exceedingly light" *Meeks v. Computer Associates, Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994). If the defendant carries this burden, the presumption of discrimination created by the *prima facie* case "drops from the case" and "the factual inquiry proceeds to a new level of specificity. *Burdine*, 450 U.S. at 255, n. 10. The burden then

shifts to the plaintiff to present sufficient evidence, including evidence produced in support of the *prima facie* case "sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision," but were merely pretext for intentional discrimination. *Combs*, 106 F.3d at 1528 (citing *Burdine*, 450 U.S. at 256, *McDonnell Douglas*, 411 U.S. at 804). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. " *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).

   C. Whether Moore has proven a *prima facie* case based on failure to promote

A plaintiff establishes a *prima facie* claim of race discrimination based on failure to promote by showing by a preponderance of the evidence that (1) he is a member of protected claim; (2) he was qualified and applied for the promotion; (3) he was rejected despite his qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted. *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1339 (11th Cir. 2000). ITT argues Moore failed to establish a *prima facie* case because Moore was not qualified and because Reeves was better qualified that Moore.

    1. Whether Moore was qualified for the DOR position

ITT argues that Moore has failed to prove his *prima facie* case because he was not qualified for the DOR position because he was not available for night and weekend work. Rice found out of Moore's unavailability subsequent to Reeves's appointment as DOR. ITT argues that because it is the plaintiff's burden to affirmatively establish that he was qualified for the position, it does not matter that Rice did not find out until subsequent to the filling of the DOR position that Moore would not be available for night and weekend work.

At the *prima facie* stage, the court must consider Rice's deposition testimony that he believed Moore to be qualified to be DOR. *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004) (plaintiff qualified where decisionmaker stated that plaintiff was "obvious choice" and "most qualified" for the position); *Sledge v. Goodyear Dunlop Tires N. Am., Ltd.*, 275 F.3d 1014, 1019-20 (11th Cir. 2001) (plaintiff qualified based on his work experience and affidavit from a supervisor).

ITT relies on *Wu v. Thomas*, 847 F.2d 1480 (11th Cir. 1988), *cert. denied*, 490 U.S. 1006 (1989), for its position that Moore must affirmatively establish that he was qualified for the position. In *Wu*, the decisionmaker never expressed its belief that Wu was qualified for a promotion to full professor. According to the faculty handbook, an individual seeking promotion to professor should show "continuing scholarship and contribution." The *Wu* Court held that the plaintiff failed to show that she was qualified for promotion to professor due to her decrease in producing published articles. In other words, the court looked at Wu's past performance as opposed to her future performance.

Here, unlike in *Wu*, the evidence presented concerning qualifications was not based on evidence in existence when Moore applied for the DOR position. Rice testified that he felt Moore was qualified to be DOR; however, he also testified that a candidate for the DOR position who was not available to work evenings or weekends would not be qualified for the position. Rice did not learn that Moore would not be available to work weekends or evenings until November or December. It is not clear under what circumstances it was learned that Moore would be unavailable to work weekends or nights. Had Moore been promoted to DOR, he may have made the necessary arrangements to allow for his availability at night and on weekends; however, Moore may have lacked the incentive to make those arrangements if he was to stay in the outside representative position. There is no evidence that at the time he applied for the position of DOR Moore had no

intention of making himself available at night and on weekends. Moore has sufficiently established that he was qualified for the position of DOR when he applied.

        2.    Whether Reeves was more qualified for the position of DOR than Moore

ITT argues that plaintiff has failed to satisfy the fourth element of a *prima facie* case because a more qualified candidate was selected for the position. ITT has presented substantial evidence that Reeves had superior qualifications to Moore based on his prior military experience which included eight years experience managing military recruiters, more than three years experience as a field representative (similar to ITT's outside representative position) at DeVry Institute of Technology, a technical college similar to ITT, prior experience in education related fields, prior teaching experience and better performance reviews. By comparison, Moore had been employed at the Birmingham ITT campus five years as an outside representative when he applied for the DOR position. He had one year of management experience at Quincy's and a Bachelor of Arts degree from Alabama State University. Objectively, it appears that Reeves was more qualified for the position of DOR than Moore. Moore has failed to establish a *prima facie* case of race discrimination based on failure to promote.

    D.    Whether, assuming that Moore established a *prima facie* case of race discrimination based on failure to promote, ITT has articulated a legitimate, non-discriminatory reason for Reeves's selection over Moore.

Even if the court assumes, but does not decide, that there is a material issue of fact concerning whether Reeves was more qualified for the position than Moore and that plaintiff has thus established a *prima facie* case, ITT has rebutted the presumption of discrimination by articulating its legitimate, non-discriminatory reason for Moore's rejection, relying on the same evidence that it relied upon in arguing that Reeves was better qualified than Moore.

11

E.      Whether Moore has carried his burden of showing pretext

It is Moore's burden to show that the reason articulated was pretext for prohibited discrimination "(1) by showing that the legitimate non-discriminatory reasons should not be believed; or (2) by showing that, in light of all of the evidence, discriminatory reasons more likely motivated the decision than the proffered reasons." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1332 (11th Cir. 1998).

Although Moore baldly asserts that Reeves "was not as qualified as the plaintiff or ... at the very most was as qualified as the plaintiff," he has not presented evidence that the disparity in qualifications was "so apparent as virtually to jump off the page and slap you in the face." *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253-54 (11th Cir. 2000), *cert. denied*, 532 U.S. 958 (2001). In order for the disparity to "jump off the page and slap you in the face," the disparity must be of such weight and significance that no reasonable person would have chosen Reeves over Moore. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1090(11th Cir. 2004), citing *Lee*, 226 F.3d at 1254.  The question before the court at this stage of the analysis is not whether Reeves was better qualified than Moore but whether a reasonable fact finder could infer that ITT did not believe that Reeves was better qualified. *B/E Aerospace*, *supra.*

Instead, Moore argues that the evidence of pretext is based on the racial hostility exhibited by Allen Rice toward African Americans at ITT.  Moore argues that discriminatory reasons more likely motivated the decision than the proffered reasons. Specifically Moore states that Rice referred to African Americans as monkeys, that he refused to consider a "towelhead" for a position, and that he told people to retaliate against African Americans for complaints of discrimination.  The monkey comment has been stricken by separate order and will therefore not be considered.  Moore has not

12

cited to the record with respect to either the "towelhead" reference or the retaliation reference. Moreover, the court cannot overlook the fact Rice selected Gonzales, an African American, as DOR prior to Reeves's promotion and that after Reeves was demoted Rice selected Ruffin, an African American, and subsequently, Johnson, also an African American as DOR. Moore failed to carry his burden of showing that discriminatory reasons more likely motivated the decision than the proffered reasons.

II.  Hostile Work Environment Claim

In order to establish a *prima facie* case of a racially hostile work environment, a plaintiff must show:

(1)    that he belongs to a protected group;
(2)    that he has been subject to unwelcome harassment;
(3)    that the harassment must have been based on a protected characteristic of the employee, such as [race];
(4)    that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and
(5)    that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

*Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002); *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999), *cert. denied*, 529 U.S. 1068 (2000).

ITT argues that Moore cannot show the fourth element – that the work environment was "permeated with 'discriminatory intimidation, ridicule and insult' that was 'sufficiently severe or perverse to alter the conditions of the victim's employment and create an abusive work environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). In deposition, plaintiff identified the conduct that he considered harassment:   (1) Reeves began going through Moore's paperwork and calling people to see if Moore had been in their homes for interviews (2) Reeves

confirmed Moore had shown up at Tuscaloosa County High School for an appointment (3) Reeves attended a presentation made by Moore at Pinson Valley High School. All of this conduct occurred within the first month after Reeves became DOR. Moore admitted that it was Reeves's job as DOR to supervise his performance. Moore did not enroll any students from the time he returned in late August or early September, 2000 until his resignation. Rice and Reeves met with Moore in early December to discuss his enrollments and performance from the prior month. Everyone in the meeting raised their voices. Moore testified that no one at ITT ever said anything to him that he found racially offensive.

      Moore testified that he believed this conduct was based on his race because he was not aware of any other reason for the conduct. In the response to the motion for summary judgment, Moore states in a conclusory fashion that the actions were based on Moore's race without stating why he believed such conduct to be based on race or referring to the record. Moore stated that the harassment took the form of write-ups and other adverse actions against him. Since Moore testified that he had never been written up prior to Reeves becoming DOR, presumably, the write-up to which he refers is the job performance letter that he refused to sign during the December meeting with Rice and Reeve. He has not identified action that was taken as a result of this write up. Further, he has not specifically identified what "other adverse actions against him" were taken.

      The requirement that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment has both an objective and subjective component. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993). Isolated or sporadic incidents of harassment do not satisfy the "severe or pervasive" standard of a hostile work environment claim. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998); *see also Gupta v. Fla. Bd. Of Regents*, 212 F.3d 571, 583

(11th Cir. 2000), *cert. denied*, 531 U.S. 1076 (2001). While Moore may have subjectively perceived the environment to be abusive, he has failed to present evidence that would allow this court to find that a reasonable person would find the environment to be hostile or abusive. Reeves's responsibilities included supervising Moore and the actions taken clearly fall within the supervisory category.

III. Constructive Discharge claim

"A constructive discharge occurs when a discriminatory employer imposes working conditions that are "so intolerable that a reasonable person in [the employee's] position would have been compelled to resign." *Fitz v. Pugmire Lincoln-Mercury, Inc.*, 348 F.3d 974, 977 (11th Cir. 2003).

ITT argues that Moore resigned for reasons wholly unrelated to race – because he was bitter about Reeves's efforts to monitor and supervise his performance and because of additional familial obligations due to his wife's death.

Moore responds:

> Moore was constantly ridden hard by Rice and Reeves. The evidence is clear that Rice was behind all of these actions because of Moore's leadership in the fight against discrimination at the Birmingham campus and because of his race.

There are no references in Moore's statement of facts concerning Moore's alleged "leadership in the fight against discrimination at the Birmingham campus." Moore testified that he assumed the conduct was based on race because he knew of no other reason for it. Moore has not identified the actions that constitute being "ridden hard;" however, the court assumes he refers to the same conduct set out in the hostile work environment discussion. Based on the facts before the

court, the court cannot find ITT was a discriminatory employer nor that ITT imposed working conditions that are "so intolerable that a reasonable person in [the employee's] position would have been compelled to resign." *Fitz, supra.*

Based on the foregoing, ITT's Motion for Summary Judgment (doc. #23) is due to be granted. A separate final judgment consistent with this memorandum of opinion will be entered simultaneously herewith.

As to the foregoing it is SO ORDERED this the 20th day of September, 2005.

_____
PAUL W. GREENE
CHIEF MAGISTRATE JUDGE