FILED

2005 Sep-20 PM 02:00
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SAMUEL MOORE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 02-PWG-2692-S |
| | ) |
| ITT TECHNICAL INSTITUTE, | ) |
| | ) |
| Defendant. | ) |

| | |
|---|---|
| STEPHEN HOBBS, BARRY JEFFERSON, | ) |
| WEENA JONES, KIMBERLY McTYER, | ) |
| CARRIE MOORE AND CHELAVONNE | ) |
| SINGLETON, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 03-PWG-0708-S |
| | ) |
| ITT TECHNICAL INSTITUTE, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OF OPINION

Stephen Hobbs, plaintiff, filed this action against ITT Technical Institute, defendant, alleging

race discrimination in employment in violation of Title VII of the Civil Rights Act of 1964.

Specifically, he alleges that he was racially discriminated against because two leads were taken from

him, he was placed on probation for two months, and he made less than white employees who began

working at ITT after he did.  He further alleges that  he was constructively discharged.  Hobbs seeks

injunctive relief, back pay, punitive and compensatory damages, and nominal damages.

The parties have consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C.

§ 636(c) and LR 73.2.

This case is before the court on ITT's Motion for Summary Judgment. (Doc. # 24).

Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 56, *Federal Rules of Civil Procedure*. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his *prima facie* entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be `no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule

> facilitates the dismissal of factually unsupported
> claims prior to trial.

898 F.2d at 1532.

The following pertinent  facts are undisputed or, if disputed, viewed in the light most favorable to Hobbs, the nonmoving party.

ITT is a private college system focused on technology-oriented programs of study operating over 70 ITT Technical Institutes in 28 states.  Hobbs was employed with the Birmingham campus of ITT from January 4, 1999 until March 29, 2002.  He interviewed for employment with  Director of Recruitment Darrell Gonzales, an African American, and Allen Rice, the director of the Birmingham campus, white.  Hobbs was hired  into the marketing department as an inside representative.  Inside representatives are responsible for recruiting, enrolling and starting as ITT students potential ITT students who are not high school students.

Approximately one month after being hired as an inside representative, Hobbs was transferred to an outside representative position.  Outside representatives are responsible for recruiting, interviewing, enrolling and starting high school students as ITT students.

Each ITT employee is provided with a current version of ITT's Handbook containing ITT's Equal Employment Opportunity policy which provides, in part, "Employment selection and related decisions are made without regard to race, [...] sex [...] or any other reason prohibited by law."  ITT also distributes its freestanding Anti-Harassment and Anti-Discrimination Guidelines to all ITT employees.  ITT's policy prohibiting harassment and discrimination is also displayed in the employee break room.

On February 26, 2001, Ms. Green, a teacher at Central Tuscaloosa High School completed an Educational Representative Visit Evaluation based on a presentation by Hobbs. Ms. Green indicated that she would not invite ITT back the following year because "Mr. Hobbs did not talk about secondary alternatives and when the students asked him about ITT his answers were vague and snide." Based on this evaluation, Benny Reeves, the white director of recruitment who replaced Gonzales in 2000, took the school and two leads from the school from Hobbs. Although Hobbs testified that Reeves gave these leads to Steve Litvine, a white male, Reeves testified that the leads were assigned to Barry Jefferson, an African American male, and Kimberly McTyer, an African American female. Likewise, Jefferson and McTyer testified that the leads were assigned to them.

Reeves placed Hobbs on probation from February 1 to March 31, 2001 based on Hobbs's lack of production during January 2001. Hobbs believes that the production of Litvine also dropped during this period because enrollment for the whole school dropped at this time. Hobbs admitted that he did not meet his production goal for January 2001 and stated that he did not know of any other ITT employee who did not meet his or her production goals during this time. According to Reeves, Litvine's performance did not fall below his production goals. Hobbs had been counseled by Reeves in December 2000 regarding his lack of production and balancing his job duties in adjusting the new responsibilities occasioned when the outside representatives assumed some of the duties previously performed by the high school coordinator. Jerome Ruffin, Reeves's successor as director of recruitment, also placed Hobbs on probation for lack of enrollments. Hobbs complained that not putting Cary Booth on probation was race discrimination. Cary Booth never had any significant time period without any enrollments. Ruffin gave Meredith Rowlen, white female inside representative, a letter of warning regarding her production.

4

In January, 1999, Hobbs's starting salary as an inside representative was $27,000.   Hobbs had two years prior sales experience selling frozen foods.   In December, 1999, Cary Booth, a white male, was employed as an inside representative with a starting salary of $31,600.   Booth had six years of sales experience in the education market.   Meredith Rowlen, white female, and Lakeya Tuck, an African American female, were hired as inside representatives effective January 28, 2002 and April 8, 2002 respectively, each with an annual salary of $33,200.

Representatives are promoted up the ladder from the entry level Representative position to the highest position, Master, Level 3, based on the individual representative's production.   Each representative level is assigned a salary range by ITT headquarters with a minimum, midpoint and maximum.   Salary ranges are changed on at least an annual basis and typically increase to allow ITT's campuses to attract qualified representatives.   Local schools are authorized to hire candidates with qualifying sales experience as high as a Representative, Step 2 but any further variance requires action by ITT headquarter.

Hobbs applied for employment with High Tech Institute, Inc., a competitor of ITT's, on December 3, 2001.   He was employed by High Tech on December 21, 2001 at an annual salary of $40,000 while still employed by ITT.   High Tech recruits from the same high school students as ITT.   Hobbs worked as a Field Admissions Representative for High Tech performing the same function that he was hired to perform for ITT.   Hobbs stopped recruiting for ITT when he started recruiting for High Tech.   He signed up at least two students for High Tech before the end of February 2002 while still employed by ITT.   Between March 11, 2002 and March 29, 2002, Hobbs submitted a letter of resignation effective March 29, 2002.   He was paid by ITT through March 29, 2002.   Immediately prior to receiving Hobbs's resignation letter, ITT learned that Hobbs had made a

5

recruiting presentation on March 19, 2002 for High Tech at Talladega High School, a school where ITT recruited.  ITT would have terminated Hobbs's employment for violating ITT's Conflict of Interest policy if Hobbs has not resigned.

Hobbs's High Tech employment ended in August 2002 because of lack of production and Hobbs went to ITT to interview for an available representative position.  He testified that he would have no problem returning to work at ITT.  After Hobbs left his employment with ITT, Ruffin apologized to him for "making it hard" for Hobbs, Jefferson, and McTyer. (Hobbs depo, 310-314).

*McDonnell Douglas* framework

Because Hobbs attempts to prove his case with circumstantial evidence, the burdenshifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) is applicable.  Under this framework, Hobbs has the initial burden of establishing a *prima facie* case of discrimination.  *Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *Combs v. Plantation Patterns*, 106 F.3d 1519 (11th Cir. 1997), *cert. denied,* 522 U.S. 1045 (1998).  If he proves a *prima facie* case of discrimination, the burden shifts to ITT to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its action; however, "the defendant need not persuade the court that it was actually motivated by the proffered reasons." *Burdine*, 450 U.S. at 254.  Defendant's burden is "exceedingly light" *Meeks v. Computer Associates, Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994).  If the defendant carries this burden, the presumption of discrimination created by the *prima facie* case "drops from the case" and "the factual inquiry proceeds to a new level of specificity.  *Burdine*, 450 U.S. at 255, n. 10.  The burden then shifts to the plaintiff to present sufficient evidence, including evidence produced in support of the *prima facie* case "sufficient to permit a reasonable fact finder to conclude that the reasons given by

the employer were not the real reasons for the adverse employment decision," but were merely

pretext for intentional discrimination.  *Combs*, 106 F.3d at 1528 (citing *Burdine*, 450 U.S. at 256,

*McDonnell Douglas*, 411 U.S. at 804).   "The ultimate burden of persuading the trier of fact that the

defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. "

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).

I.      Disparate treatment claims

        To establish a *prima facie* case of discrimination based on disparate treatment, Hobbs must

show that (1) he is a  member of a protected class, (2) he suffered an adverse employment action,

and (3) similarly situated persons outside the protected class were treated more favorably.  *Wilson*

*v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004); *Holifield v. Reno*, 115 F.3d 1555,

1562 (11th Cir. 1997).

> The plaintiff and the employee she identifies as a comparator must be
> similarly situated "in all relevant respects."  *Id*.  The comparator must
> be nearly identical to the plaintiff to prevent courts from second-
> guessing a reasonable decision by the employer.  *See Silvera v.
> Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001).

*Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079 (11th Cir. 2004), quoting *Turnes v. AmSouth Bank*,

*N.A.*, 36 F.3d 1057, 1060 (11th Cir. 1994)).  Assuming that a *prima facie* case is established, the court

then looks to the remainder of the *McDonnell Douglas* framework.

        With respect to his claim that leads were taken from him, he cannot show that a similarly

situated person outside the protected class was treated more favorably.  Specifically, he has not

identified a non African American who received a negative teacher evaluation and was allowed to

keep the school and leads therein.  Moreover, Hobbs stated that he believed the taking away of the

leads were due to race discrimination because the leads were given to a white representative when

they could have been given to McTyer or Jefferson.  McTyer and Jefferson, both African American, testified in deposition that they received the leads.  Hobbs has failed to establish a *prima facie* case of disparate treatment based on the reassignment of leads.

With respect to the claim that Hobbs was placed on probation and received warnings because of lack of production, he has failed to show that a similarly situated person outside the protected class was treated more favorably.   When Reeves placed Hobbs on probation in early 2001, Steve Litvine was the only other outside representative and his performance did not fall below his production goals as Hobbs's performance did.  Further, when Ruffin placed Hobbs on probation for lack of enrollments, Cary Booth was not an outside representative but more importantly had never had any significant time period without any enrollments.   In light of their superior performance to Hobbs, neither Litvine nor Booth were similarly situated persons, and Hobbs has thus failed to establish a *prima facie* case of discrimination based on probation and warnings.

Moreover, poor job performance was a legitimate, nondiscriminatory reason for ITT to place Hobbs on probation and otherwise warn him concerning his job performance.  Hobbs has failed to present evidence that the reason given by ITT was not the real reason for his probation and warnings.

With respect to his starting pay claim, Hobbs identifies Cary Booth and Meredith Rowlen as similarly situated persons outside the protected class who were treated more favorably.  Booth was hired at a starting salary $4,000 a year greater than Hobbs, and Rowlen was hired at a starting salary $6,200 a year greater.   Booth, however, was hired almost a year after Hobbs and had four more years of sales experience than Hobbs, all of which was in education.  Rowlen was hired three years after Hobbs.  The disparity in qualification between Booth and Hobbs as well as the distance in time

between hiring prevents Booth from being similarly situated.  The three year time difference in hiring dates between Hobbs and Rowlen also prevents Rowlen from being similarly situated.

Defendants have stated legitimate, nondiscriminatory reasons for the differences in starting pay – specifically, differences in qualifications and later hiring dates.  Hobbs cannot show that these reasons are not the real reasons for the differences in starting salaries because Lakeya Tuck, an African American female, who was hired just after Rowlen, was hired at the same starting salary as Rowlen.

II.     Constructive Discharge claim

 "A constructive discharge occurs when a discriminatory employer imposes working conditions that are 'so intolerable that a reasonable person in [the employee's] position would have been compelled to resign.'"  *Fitz v. Pugmire Lincoln-Mercury, Inc.*, 348 F.3d 974, 977 (11th Cir. 2003).

Hobbs argued:

> The plaintiff's work environment at ITT was so bad that even the most tolerant of persons could not have made it at ITT.  Hobbs was constantly ridden hard by Ruffin, who actually felt the need to apologize for the actions he took against him.  The evidence is clear that Rice was behind all of these actions because of Hobbs leadership in the fight against discrimination at the Birmingham campus.  Rice finally won the battle and Hobbs had no choice but to leave.

(Hobbs's Brief, pp. 26-27).

There are no references in the Hobbs's statement of facts concerning Hobbs's alleged "leadership in the fight against discrimination at the Birmingham campus."  Hobbs  has not identified the actions that constitute being "ridden hard;" however, the court assumes he refers to his placement on probation for two months  and the taking of two leads from him.  Neither his

9

placement on probation nor the taking of leads from him in 2001 were racially discriminatory.   The only conduct specifically identified by Hobbs occurred more than a year prior to his resignation and, in any event, would not have constituted working conditions that are "so intolerable that a reasonable person in [the employee's] position would have been compelled to resign."  *Fitz, supra.*  Had the working conditions been "so intolerable" it is doubtful that Hobbs would have applied for a job with ITT after his termination from High-Tech.  In addition, Hobbs testified that he would have no problem returning to work at ITT.

Although the court has addressed the merits of a constructive discharge claim, there is little reason to believe there is a credible factual predicate for the claim.  Hobbs accepted employment with an ITT competitor and had worked for that competitor for over three months  without informing ITT while continuing to draw his ITT salary, all despite that ITT employed a conflict of interest policy which unequivocally allowed for termination of any employee for violation of the policy. Rather than being constructively discharged it appears that Hobbs constructively quit.

Based on the foregoing, ITT's Motion for Summary Judgment (doc. #24) is due to be granted.  A separate final judgment consistent with this memorandum of opinion will be entered simultaneously herewith.

As to the foregoing it is SO ORDERED this the 20th day of September, 2005.

_____
PAUL W. GREENE
CHIEF MAGISTRATE JUDGE